FILED by      D.C.

ELECTRONIC

**Nov. 23, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**SECURITIES AND EXCHANGE COMMISSION,**

*Plaintiff,*

v.

**GINA P. SOLOW,**
**JAMIE L. SOLOW,**
**JSOLOW CONDO ONE, INC.,**
**VIRTUALBANK, F.S.B.**
   **n/k/a LYDIAN PRIVATE BANK, S.A.,**
**WASHINGTON MUTUAL BANK, F.A.**
   **n/k/a JP MORGAN CHASE BANK, N.A., and,**
**FEDERATION ADVANCES CORP. LLC,**

*Defendants.*

*Civil Action No.*

## 09-61868-Civ-Cohn/Seltzer

### COMPLAINT FOR FRAUDULENT TRANSFER
### AND FORECLOSURE OF EQUITABLE LIENS

COMES NOW, Plaintiff, the United States Securities and Exchange Commission ("SEC"
or "Commission"), and for its causes of action, alleges and states as follows:

### SUMMARY

1.      This matter involves a campaign of asset concealment and fraudulent transfers
employed by Defendant Jamie L. Solow ("Mr. Solow") and his wife, Gina P. Solow ("Mrs.
Solow"), with the intent to hinder, delay and defraud Mr. Solow's creditors, including the
Commission.

2.      On November 14, 2006, the Commission brought suit against Mr. Solow in the
U.S. District Court for the Southern District of Florida (the "SEC Litigation").

3.      In the SEC Litigation, the Commission alleged that Mr. Solow made unsuitable
sales of risky inverse floating rate collateralized mortgage obligations ("inverse floaters") to
retail investors and also engaged in unauthorized and fraudulent trading of these securities for his



former firm's proprietary account.

4.      On January 31, 2008, following a nine-day trial in the SEC Litigation, the jury found Mr. Solow liable on all counts of the Complaint, including the violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and Section 17(a) of the Securities Act of 1933.

5.      On May 14, 2008, the Court entered its Final Judgment against Mr. Solow ordering him to:  pay a civil penalty of $2,646,485.99; and disgorge $2,646,485.99 in commissions paid to him in 2003 by Archer Alexander Securities Corp. and pay prejudgment interest thereon in the amount of $778,302.91 (disgorgement and prejudgment interest hereinafter collectively referred to as the "Ill-Gotten Funds"), for a judgment totaling $6,071,274.89.  Post-judgment interest accrues on the judgment pursuant to 28 U.S.C. § 1961.

6.      On June 13, 2008, Mr. Solow filed an Affidavit with the Court in the SEC Litigation swearing that he was unable to pay the amounts ordered by the Final Judgment.  To date, Mr. Solow has paid only $2,639.24 toward his obligations under the Final Judgment in the SEC Litigation.

7.      Through post-judgment discovery in the SEC Litigation, the Commission learned of the following fraudulent transfers of property from Mr. Solow to his wife.

    a)      At or about the time arbitration proceedings had been commenced against him by his former firm, and at a time when Mr. Solow knew or should have known that the Commission would be filing a civil suit against him, he transferred to Mrs. Solow his 100% ownership interest in the corporation which holds title to the condominium where the Solows currently reside.

    b)      In the months following the August 25, 2005 issuance of the Commission's notice

of intent to sue (the "Wells Notice") to Mr. Solow, and within days after individual customer arbitration claims were filed against him, Mr. Solow transferred two valuable parcels of real estate in Utah – with a combined net value of $2.25 million – to Mrs. Solow for no consideration.

c)     In the days preceding the jury trial in the SEC Litigation and in the months between the jury's verdict and entry of the Final Judgment, Mr. Solow and his wife liquidated joint securities accounts totaling more than $1.5 million.  Of these funds, $1.16 million was subsequently transferred to an account titled in Mrs. Solow's name only.

8.     Mr. Solow used a portion of his Ill-Gotten Funds as follows: (a) approximately $1.1 million was used by Mr. Solow to improve and maintain his homestead located in Hillsboro Beach, Florida; and (b) approximately $83,000 was used by Mr. Solow to improve and maintain the condominium in which Mr. and Mrs. Solow currently reside.

9.     Pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.*, the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.*, and Florida common law, the Commission, through this action, seeks to: (a) unwind the fraudulent transfers of property to Mrs. Solow; (b) obtain a money judgment against Mrs. Solow for the value of the fraudulently transferred assets that she has since liquidated; and, (c) to establish and foreclose equitable liens against the Solows' condominium and homestead properties.

## PARTIES, JURISDICTION AND VENUE

10.     This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1345, because the Plaintiff is an agency of the United States.  The Southern District of Florida is the

3

proper venue for this proceeding, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in this district.

11.     Defendant Jamie L. Solow ("Mr. Solow"), age 48, is an individual resident of the State of Florida, who maintains his primary residence at 4240 Galt Ocean Drive, Unit 504, Fort Lauderdale, FL 33308.

12.     Defendant Gina P. Solow ("Mrs. Solow"), age 48, is an individual resident of the State of Florida, who maintains her primary residence at 4240 Galt Ocean Drive, Unit 504, Fort Lauderdale, FL 33308.  At all relevant times, Mrs. Solow was Mr. Solow's wife.

13.     JSolow Condo One, Inc. is a Florida corporation formed in 2003 by Mr. Solow to hold title to a residential condominium located at 4240 Galt Ocean Drive, Unit 504, Fort Lauderdale, FL (the "Galt Ocean Condo").

14.     Vitualbank, F.S.B., now known as Lydian Private Bank, S.A., is a lending institution that currently holds a mortgage on the Solows' homestead property at 1001 Hillsboro Mile, Hillsboro Beach, FL 33062 (the "Hillsboro Mile Property").

15.     Washington Mutual Bank, F.A., now known as JP Morgan Chase Bank, N.A., is a lending institution that currently holds a mortgage on the Hillsboro Mile Property.

16.     Federation Advances Corp. LLC is an entity that has recorded mortgages on the Hillsboro Mile Property and the Galt Ocean Condo.

## FACTS

### Mr. Solow Engaged in Wrongful Conduct at Archer Alexander in 2003 and the Claims Arising From Such Conduct Were Asserted in Arbitration Beginning in 2004

17.     From May 18, 2000 through December 9, 2003, Mr. Solow was a securities broker associated with Archer Alexander Securities Corp. ("Archer"), a broker-dealer registered with the Commission.

4

18.     During 2003, Mr. Solow engaged in a series of securities trades that: (a) were beyond the scope of his authority with Archer; (b) caused Archer to be exposed to significant risk of loss; and (c) were concealed from Archer by means of false and fraudulent trade documentation.

19.     Based on Mr. Solow's conduct described above, Archer commenced arbitration proceedings against Mr. Solow on or about June 11, 2004.

### Mr. Solow's Transfer to Mrs. Solow of 100% Ownership Interest in the Corporation Holding Title to the Condominium Where the Solows Currently Reside

20.     On June 12, 2003, Mr. Solow incorporated JSolow Condo One, Inc. ("JSolow Condo") by filing Articles of Incorporation with the Florida Department of State.

21.     On June 16, 2003, JSolow Condo purchased a residential condominium located at 4240 Galt Ocean Drive, Unit 504, Fort Lauderdale, FL 33308 (the "Galt Ocean Condo").

22.     The funds used to purchase the Galt Ocean Condo, $765,000, were derived entirely from Mr. Solow's funds.

23.     The IRS tax form K-1 issued by JSolow Condo for the 2003 tax year (issued on December 28, 2004) shows Mr. Solow as the company's 100% shareholder. A K-1 form issued by the company for the 2004 tax year (issued on August 11, 2005), however, shows Mrs. Solow as the company's 100% shareholder.

24.     Mr. Solow received no economic value from Mrs. Solow in exchange for the transfer of the stock in JSolow Condo.

25.     Both Mr. and Mrs. Solow continue to reside in the Galt Ocean Condo.

### Samco Investor Claims Filed Against Mr. Solow in 2006

26.     From June 4, 2004 through July 14, 2006, Mr. Solow was employed as a registered representative for Samco Financial Services, Inc. ("Samco").

5

27. As a registered representative of Samco, Mr. Solow sold securities known as collateralized mortgage obligations ("CMOs") to individual investors (the "Samco Clients"). More specifically, Mr. Solow specialized in selling particular types of CMOs referred to as "Inverse Floaters."

28. In 1993, the National Association of Securities Dealers ("NASD") published Notice 93-73 to remind its members and their representatives that CMOs were suitable only for sophisticated investors. As to Inverse Floaters, NASD Notice 93-73 warned that such investments "are only suitable for sophisticated investors with a high-risk profile and the investor must be made aware of the risks and characteristics of [Inverse Floaters] being purchased."

29. Beginning in May, 2006 and continuing through October, 2006, more than forty of Mr. Solow's Samco clients filed arbitration claims with the National Association of Securities Dealers against Mr. Solow (the "Samco Arbitration Claims"), alleging, *inter alia*, fraud, fraudulent inducement and breach of fiduciary duties.

30. The Samco Arbitration Claims alleged that in early 2006, interest rates began moving in a direction that caused losses in the account values of Mr. Solow's Samco clients.

31. The Samco Arbitration Claims further alleged that during the 25-month period that Mr. Solow sold CMOs to his Samco Clients, Mr. Solow routinely failed to advise his clients of the risks associated with these investments. Moreover, the Samco Arbitration Claims alleged that many of Mr. Solow's Samco Clients were unsophisticated investors who did not understand, and whose investment portfolios could not tolerate, the risk and volatility of CMOs.

32. The Samco Arbitration Claims sought actual damages against Mr. Solow totaling more than $15.6 million.

33. The first nine Samco Arbitration Claims were filed between May 15, 2006 and

6

July 13, 2006.

### After Initiation of the Samco Arbitration Proceedings Mr. Solow Transferred
### Two Utah Parcels of Real Estate to His Wife

#### Thaynes Canyon Property

34.     In February of 2001, Mr. Solow purchased a single family residence located at 67 Thaynes Canyon Drive, Park City, Utah 84060 (the "Thaynes Canyon Property"). A Warranty Deed dated February 15, 2001, reflects that title to the Thaynes Canyon Property was vested in Mr. Solow's name only.

35.     In an April, 2006 loan application, Mr. Solow represented that the Thaynes Canyon Property was worth $1.5 million.

36.     By Quit-Claim Deed dated July 18, 2006, Mr. Solow transferred to Mrs. Solow all of his right, title and interest in and to the Thaynes Canyon Property. Mr. Solow received no economic value in exchange for this property transfer.

37.     The Solow family continues to enjoy the use of this property, visiting for extended periods during the winter months. Mr. and Mrs. Solow recently occupied the Thaynes Canyon Property from mid-December, 2008 through mid-March, 2009.

#### White Pine Canyon Property

38.     On or about March 26, 2005, Mr. Solow entered into a contract to purchase approximately seven acres of vacant land located at 47 White Pine Canyon Road, Park City, Utah 84060 (the "White Pine Canyon Property").

39.     Mr. Solow purchased the White Pine Canyon Property for $1.345 million with cash derived primarily from the proceeds of the sale of a parcel of real estate in Deerfield Beach, Florida previously owned by Mr. Solow.

40.     A Special Warranty Deed dated September 14, 2005, reflects that title to the

7

White Pine Canyon Property was vested in Mr. Solow's name only.

41.     By Quit-Claim Deed dated July 18, 2006, however, Mr. Solow transferred to Mrs. Solow all of his right, title and interest in and to the White Pine Canyon Property.  Mr. Solow received no economic value in exchange for this property transfer.

42.     Approximately five months after receiving title to the White Pine Canyon Property, Mrs. Solow entered into a contract to sell the property for $1.65 million.

43.     By wire transfer dated February 26, 2007, Mrs. Solow received $1,533,366.90 in net proceeds from the sale of the White Pine Canyon Property.

<u>The SEC Litigation Against Mr. Solow</u>

44.     Prior to the transfer of the stock of JSolow Condo to Mrs. Solow, and the transfers of the Thaynes Canyon and White Pine Canyon Properties to Mrs. Solow, on January 20, 2004, Commission staff contacted counsel for Mr. Solow to advise that the Commission was conducting an inquiry into the marketing and sale of inverse floaters to retail investors by Mr. Solow and requested the production of certain documents.

45.     Commission staff questioned Mr. Solow under oath on three separate occasions: April 7, 2004; May 18, 2004 and April 6, 2005.  In the third and final Commission testimony taken on April 6, 2005, Mr. Solow invoked his Fifth Amendment right against self-incrimination and refused to answer questions related to the suitability of investments he made on behalf of his Samco clients.

46.     By letter dated August 25, 2005, Commission staff notified counsel for Mr. Solow via a Wells Notice that it intended to recommend that the Commission bring a civil action against Mr. Solow alleging that Mr. Solow violated various provisions of the federal securities laws.

8

47.    On November 14, 2006, the Commission filed its Complaint in the U.S. District Court for the Southern District of Florida, Civil Action No. 06-81041 (DMM) (the "SEC Litigation") seeking, *inter alia*, civil monetary penalties and an order requiring Mr. Solow "to disgorge, with prejudgment interest, the amount by which he was unjustly enriched as a result of his participation in the conduct described [in the Complaint]."

48.    The trial against Mr. Solow in the SEC Litigation began on January 22, 2008 and concluded on January 31, 2008, when the jury returned its verdict finding Mr. Solow liable on all counts of the Second Amended Complaint, including the violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and Section 17(a) of the Securities Act of 1933.

49.    On February 8, 2008, the Commission filed, and served upon counsel for Mr. Solow, its Motion for Remedies, seeking a judgment totaling $6,214,632.46, comprised of penalties, disgorgement and prejudgment interest.

50.    On April 9, 2008, the Court held an evidentiary hearing on remedies to be imposed against Mr. Solow.

51.    The Court ruled that in returning its verdict, the jury found Mr. Solow had fraudulently traded inverse floaters. Accordingly, on May 14, 2008, the Court ordered Mr. Solow to pay a penalty of $2,646,485.99, and disgorge Ill-Gotten Funds of $3,424,788.90, for a total of $6,071,274.89 (the "Judgment").

### The Ill-Gotten Funds the Court Required Mr. Solow to Pay Equals the Commissions He was Paid for His Fraudulent Trades at Archer During 2003 Plus Prejudgment Interest

52.    The Judgment requires Mr. Solow to pay disgorgement, pre-judgment interest thereon, and civil penalties. The disgorgement ordered by the Court, $2,646,485.99,

9

"represent[s] profits gained as a result of the conduct alleged in the Complaint." The prejudgment interest awarded on that amount is $778,302.91.

53.    More specifically, the Court ordered Mr. Solow to disgorge an amount equal to the commissions he "was paid for his unauthorized trades at Archer during 2003" plus pre-judgment interest (*i.e.* the Ill-Gotten Funds). The jury found that Mr. Solow violated the antifraud provisions of the securities laws (Section 10(b) of the Securities Act of 1934 and Rule 10b-5 promulgated thereunder and Section 17(a) of the Securities Act of 1933); the Court ruled that a connection exists between the jury's finding that Mr. Solow violated the securities laws and the Ill-Gotten Funds noting that "there is a causal nexus between the disgorgement amount and the jury's verdict of liability against Mr. Solow, and the equitable remedy of disgorgement is appropriate." [Order, Dkt. 139].

54.    Accordingly, the Judgment provides, in relevant part, that Mr. Solow "shall satisfy this [disgorgement and prejudgment interest] obligation by paying $3,424,788.90 within ten business days to the Clerk of this Court...."

55.    Since the entry of the Judgment, Mr. Solow has made payments totaling $2,639.24. The current outstanding principal balance on the Judgment is $6,068,635.65. The amount of Ill-Gotten Funds that Mr. Solow has failed to pay is $3,424,788.90. Post judgment interest on these amounts continues to accrue.

<u>In the Weeks Before and After the Trial in this Case,
the Solows Liquidated Securities Accounts Totaling $1,266,856 and
Transferred $777,000 from their Joint Checking Account to Accounts Titled
in Mrs. Solow's Name and Then to Swiss Accounts and Trust Accounts</u>

56.    On January 2, 2008, Mr. and Mrs. Solow deposited into their joint checking account at Bank of America (the "Joint Checking Account") a cashier's check in the amount of $46,856.27 issued to them by Highland Financial Group, Inc. ("Highland").

57.     On January 8, 2008, Highland wire-transferred $400,000 to the Solows' Joint Checking Account.

58.     In three transactions dated February 7, February 29 and March 7, 2008, Mr. and Mrs. Solow received additional payments totaling $820,000 from Highland and Arlene Zayas ("Ms. Zayas"), the wife of Highland's principal officer, James Riggio.  These payments were deposited into the Solows' Joint Checking Account.

59.     In three transactions dated February 29, March 10 and April 8, 2008, the Solows transferred $777,000 from their Joint Checking Account to a Bank of America checking account titled, "Gina Pearl Solow POD Jamie Leigh Solow" (the "POD Account").  Mrs. Solow opened the POD Account on October 31, 2007.

60.     On April 18, 2008, Ms. Zayas wire-transferred $279,256.10 from the Solows' joint securities account at Highland to Mrs. Solow's POD Account.

61.     On or about April 21, 2008, Mrs. Solow visited with bankers in Zurich, Switzerland for the purpose of depositing cash and jewelry in trust and/or safe deposit accounts.

62.     Through an inter-account transfer dated May 7, 2008, Mrs. Solow transferred $4,900 from the Solows' Joint Checking Account to Mrs. Solow's POD Account.  This transaction left the Solows' Joint Checking Account with a balance of twenty dollars.

The Funds at Issue in the SEC's Disgorgement Counts Upon Which Mr. Solow Was Found Liable are Traceable to the Hillsboro Mile Property and the Galt Ocean Condo

63.     In 2003, Mr. Solow received $3,960,381.06 in "nonemployee compensation" from Archer.

64.     The Solows' 2003 joint federal income tax return recognizes Mr. Solow's income from Archer, $3,960,381 (the "Archer Compensation"), as "pass through" income routed through Mr. Solow's wholly-owned company, Jsolow Enterprises, Inc. ("Solow Enterprises").

11

65.   For federal income tax purposes, the Solows only recognized the Archer compensation as it was disbursed to them, or for their benefit, by Solow Enterprises.

66.   Of the $3.96 million in Archer Compensation booked by Solow Enterprises in 2003, $3.28 million was disbursed to, or for the benefit of, Mr. Solow.

67.   During 2003, Solow Enterprises disbursed cash to or for Mr. Solow as follows:

    (a)   $50,000.00    transferred to JSolow Condo, the corporation that holds title to the Galt Ocean Condo;

    (b)   $32,686.34    for improvement, maintenance and utilities for the Galt Ocean Condo; and,

    (c)   $1,106,923.09 for improvement, maintenance, utilities and mortgage payments for the Solows' Hillsboro Mile Property.

**COUNT I**
**28 U.S.C. § 3304(b)(1)(A)**
**Transfers With Intent to Hinder, Delay or Defraud a Creditor**
**(Thaynes Canyon Property)**

68.   Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

69.   Mr. Solow transferred his ownership interests in the Thaynes Canyon Property to Mrs. Solow (the "Thaynes Canyon Transfer") with actual intent to hinder, delay or defraud one or more of his creditors, including, without limitation, the Commission and/or the Samco investors who were named as claimants in the Samco Arbitration Claims.

70.   With respect to the Thaynes Canyon Transfer, the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

    (a)   the transfer was to an insider;

    (b)   Mr. Solow retained possession or control of the property after it was transferred;

    (c)   before the transfer was made, Mr. Solow had been sued or threatened with suit;

    (d)   Mr. Solow removed or concealed assets;

    (e)   little or no consideration was received by Mr. Solow in exchange for the transfer; and,

    (f)   the transfer occurred shortly before or shortly after a substantial debt was incurred.

## COUNT II
### 28 U.S.C. § 3304(b)(1)(A)
### Transfers With Intent to Hinder, Delay or Defraud a Creditor
### (The White Pine Canyon Property)

71.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

72.     Mr. Solow transferred his ownership interests in the White Pine Canyon Property to Mrs. Solow (the "White Pine Canyon Transfer") with actual intent to hinder, delay or defraud one or more of his creditors, including, without limitation, the Commission and/or the Samco investors who were named as claimants in the Samco Arbitration Claims.

73.     With respect to the White Pine Canyon Transfer, the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

(a)     the transfer was to an insider;
(b)     Mr. Solow retained possession or control of the property after it was transferred;
(c)     before the transfer was made, Mr. Solow had been sued or threatened with suit;
(d)     Mr. Solow removed or concealed assets;
(e)     little or no consideration was received by Mr. Solow in exchange for the transfer; and,
(f)     the transfer occurred shortly before or shortly after a substantial debt was incurred.

## COUNT III
### 28 U.S.C. § 3304(b)(1)(A)
### Transfers With Intent to Hinder, Delay or Defraud a Creditor
### (The Cash and Securities)

74.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

75.     Each of the transfers described in Paragraphs 56 - 62, above (the "Cash and Securities Transfers") were made by, for, and/or with the acquiescence of Mr. Solow with actual intent to hinder, delay or defraud one or more of his creditors, including, without limitation, the Commission and/or the Samco investors who were named as claimants in the Samco Arbitration

Claims.

76.     With respect to each of the Cash and Securities Transfers, the following badges of

fraud, among others, are applicable and are to be considered in determining actual intent:

(a)     the transfer was to an insider;
(b)     Mr. Solow retained possession or control of the property after it was transferred;
(c)     the transfer was concealed;
(d)     before the transfer was made, Mr. Solow had been sued or threatened with suit;
(e)     the transfer was of substantially all of Mr. Solow's assets;
(f)     Mr. Solow removed or concealed assets;
(g)     little or no consideration was received by Mr. Solow in exchange for the transfer; and,
(h)     the transfer occurred shortly before or shortly after a substantial debt was incurred.

**COUNT IV**
**28 U.S.C. § 3304(b)(1)(B)(ii)**
**Transfers for Less than Equivalent Value**
**With Awareness of Impending Inability to Pay Debts**
**(The Thaynes Canyon Property)**

77.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if

fully set forth herein.

78.     Mr. Solow transferred his ownership interest in the Thaynes Canyon Property to

Mrs. Solow without receiving a reasonably equivalent value in exchange for the transfer and, at

the time of such transfer, Mr. Solow believed or reasonably should have believed that he would

incur debts beyond his ability to pay as they became due.

**COUNT V**
**28 U.S.C. § 3304(b)(1)(B)(ii)**
**Transfers for Less than Equivalent Value**
**With Awareness of Impending Inability to Pay Debts**
**(The White Pine Canyon Property)**

79.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if

fully set forth herein.

80.     Mr. Solow transferred his ownership interest in the White Pine Canyon Property

14

to Mrs. Solow without receiving a reasonably equivalent value in exchange for the transfer and, at the time of such transfer, Mr. Solow believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

**COUNT VI**
**28 U.S.C. § 3304(b)(1)(B)(ii)**
**Transfers for Less than Equivalent Value**
**With Awareness of Impending Inability to Pay Debts**
**(The Cash and Securities)**

81.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

82.     Each of the transfers described in Paragraphs 56 - 62, above (the "Cash and Securities Transfers") were made by, for, and/or with the acquiescence of Mr. Solow without receiving a reasonably equivalent value in exchange for the transfer and, at the time of such transfer, Mr. Solow believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

**COUNT VII**
**Fla. Stat. § 726.105(1)(a)**
**Transfers With Intent to Hinder, Delay or Defraud a Creditor**
**(The Cash and Securities)**

83.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

84.     Each of the transfers described in Paragraphs 56 - 62, above (the "Cash and Securities Transfers") were made by, for, and/or with the acquiescence of Mr. Solow with actual intent to hinder, delay or defraud one or more of his creditors, including, without limitation, the Commission and/or the Samco investors who were named as claimants in the Samco Arbitration Claims.

85.     With respect to each of the Cash and Securities Transfers, the following badges of

15

fraud, among others, are applicable and are to be considered in determining actual intent:

    (a)    the transfer was to an insider;

    (b)    Mr. Solow retained possession or control of the property after it was transferred;

    (c)    the transfer was concealed;

    (d)    before the transfer was made, Mr. Solow had been sued or threatened with suit;

    (e)    the transfer was of substantially all of Mr. Solow's assets;

    (f)    Mr. Solow removed or concealed assets;

    (g)    little or no consideration was received by Mr. Solow in exchange for the transfer; and,

    (h)    the transfer occurred shortly before or shortly after a substantial debt was incurred.

**COUNT VIII**
**Fla. Stat. § 726.105(1)(a)**
**Transfers With Intent to Hinder, Delay or Defraud a Creditor**
**(The JSolow Condo One, Inc. Stock)**

86.    Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

87.    Mr. Solow transferred his ownership interests in JSolow Condo One, Inc. to Mrs. Solow (the "Condo Stock Transfer") with actual intent to hinder, delay or defraud one or more of his creditors, including, without limitation, the Commission, Archer and/or the Samco investors who were named as claimants in the Samco Arbitration Claims.

88.    With respect to the Condo Stock Transfer, the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

    (a)    the transfer was to an insider;

    (b)    Mr. Solow retained possession or control of the property after it was transferred;

    (c)    before the transfer was made, Mr. Solow had been sued or threatened with suit;

    (d)    Mr. Solow removed or concealed assets;

    (e)    little or no consideration was received by Mr. Solow in exchange for the transfer; and,

    (f)    the transfer occurred shortly before or shortly after a substantial debt was incurred.

16

### COUNT IX
### Fla. Stat. § 726.105(1)(b)(2)
### Transfers for Less than Equivalent Value
### With Awareness of Impending Inability to Pay Debts
### (The Cash and Securities)

89.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

90.     Each of the transfers described in Paragraphs 56 - 62, above (the "Cash and Securities Transfers") were made by, for, and/or with the acquiescence of Mr. Solow without receiving a reasonably equivalent value in exchange for the transfer and, at the time of such transfer, Mr. Solow believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

### COUNT X
### Fla. Stat. § 726.105(1)(b)(2)
### Transfers for Less than Equivalent Value
### With Awareness of Impending Inability to Pay Debts
### (The JSolow Condo One, Inc. Stock)

91.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

92.     Mr. Solow transferred his ownership interests in JSolow Condo One, Inc. to Mrs. Solow (the "Condo Stock Transfer") without receiving a reasonably equivalent value in exchange for the transfer and, at the time of such transfer, Mr. Solow believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

### COUNT XI
### Equitable Lien Foreclosure
### (The Galt Ocean Drive Condominium)

93.     Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

17

94. The Ill-Gotten Funds Mr. Solow was ordered to pay were funds obtained through fraud or egregious conduct.

95. Of the Ill-Gotten Funds, $83,686.34 was used to invest in, purchase and/or improve the Galt Ocean Condo.

**COUNT XII**
**Equitable Lien Foreclosure**
**(The Hillsboro Mile Property)**

96. Plaintiff repeats and realleges each allegation in Paragraphs 1 through 67 as if fully set forth herein.

97. The Ill-Gotten Funds Mr. Solow was ordered to pay were funds obtained through fraud or egregious conduct.

98. Of the Ill-Gotten Funds, $1,106,923.09 was used to invest in, purchase and/or improve the Hillsboro Mile Property.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff hereby petitions this Court for an Order providing for:

A. Pursuant to 28 U.S.C. § 3306(a)(1), the avoidance of the fraudulent transfers to the extent necessary to satisfy the civil penalty award entered against Mr. Solow in the Final Judgment;

B. Pursuant to 28 U.S.C. § 3307(b), a money judgment against Gina P. Solow in an amount equal to the value of all assets fraudulently transferred to Gina P. Solow by Jamie L. Solow, to the extent necessary to satisfy the civil penalty award entered against Mr. Solow in the Final Judgment. In accordance with 28 U.S.C. § 3307(c), the value of such assets transferred, and therefore the amount of the money judgment, should be the value of the assets at the time of the respective transfers, subject to adjustment as the equities may require;

C. Pursuant to Fla. Stat. § 726.108(1)(a), the avoidance of the fraudulent transfers described above to the extent necessary to satisfy the disgorgement and prejudgment interest amounts ordered in the Final Judgment entered against Mr. Solow;

D. Pursuant to Fla. Stat. §§ 726.109(2) and (3), a money judgment against Gina P.

18

Solow in an amount equal to the value of all assets fraudulently transferred to Gina P. Solow by Jamie L. Solow as described above to the extent necessary to satisfy the disgorgement and prejudgment interest amounts ordered in the Final Judgment entered against Mr. Solow.  In accordance with Fla. Stat. § 726.109(3), the value of such assets transferred, and therefore the amount of the money judgment, should be the value of the assets at the time of the respective transfers, subject to adjustment as the equities may require;

E.      Pursuant to 28 U.S.C. § 2201, a declaration that the Hillsboro Mile Property is subject to an equitable lien in favor of the U.S. Securities and Exchange Commission in the amount of $1,106,923.09, plus pre-judgment interest, and, therefore, that the Hillsboro Mile Property may be sold pursuant to 28 U.S.C. §§ 2001 and 2002, with the proceeds to be paid to mortgagees, lienholders and other allowed claimants in the amounts and order of priority as established by this Court through summary proceedings in the instant action;

F.      Pursuant to 28 U.S.C. § 2201, a declaration that the Galt Ocean Condo is subject to an equitable lien in favor of the U.S. Securities and Exchange Commission in the amount of $83,686.34, plus pre-judgment interest, and, therefore, that the Galt Ocean Condo may be sold pursuant to 28 U.S.C. §§ 2001 and 2002, with the proceeds to be paid to mortgagees, lienholders and other allowed claimants in the amounts and order of priority as established by this Court through summary proceedings in the instant action;

G.      Pursuant to 28 U.S.C. § 3306(a)(2), garnishment of bank and/or securities accounts maintained by Gina P. Solow up to the value of the assets transferred to and/or for her benefit, not to exceed the penalty awarded to the SEC in the Final Judgment;

H.      Pursuant to 28 U.S.C. § 3306(a)(2), attachment of all property in the possession, custody or control of Gina P. Solow, and in which Gina P. Solow has substantial non-exempt interests, up to the value of the assets transferred to and/or for the benefit of Gina P. Solow, not to exceed the penalty awarded to the SEC in the Final Judgment; and,

I.      Any other relief the circumstances may require.

Respectfully submitted this 19th day of November, 2009.

By:

John G. Silbermann
Marsha C. Massey
100 F Street, NE
Washington, DC 20549
Tel:  (202) 551-4907 (Silbermann)
Tel:  (202) 551-4452 (Massey)
Fax:  (202) 772-9347
E-mail:  Silbermannj@sec.gov
          Masseym@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission

20

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed C**

D.C.

ELECTRONIC

**Nov. 23, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

U.S. Securities and Exchange Commission

**DEFENDANTS**

Gina P. Solow, Jamie L. Solow, et al. (se

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

John G. Silbermann, Assistant Chief Litigation Counsel
U.S. Securities and Exchange Commission, 100 F Street, NE, MS 6030,
Washington, DC 20549, (202) 551-4907

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

*09CV61868  JIC/BSS*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☒ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Re-filed- (see VI below)

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case  ☐ YES  ☑ NO
b) Related Cases  ☑ YES  ☐ NO

JUDGE Middlebrooks

DOCKET NUMBER  06-81041

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. § 3301, et seq.  Fraudulent transfer action under the Federal Debt Collection Procedures Act

LENGTH OF TRIAL via __7__ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  6,050,132.43

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  November 19, 2009

**FOR OFFICE USE ONLY**

AMOUNT _____   RECEIPT # _____   IFP _____

WAIVED